## In re Rubinovitz.

*Charles Alvin Jones* and *Donald C. Anderson,* for petitioner.

*William Kalson,* for respondent.

GRAY, J., June 25, 1930.—At the registration of electors in the fall of 1929, Israel Rubinovitz, of 813 Fifth Avenue, was registered in the First District of the Third Ward, City of Pittsburgh, Allegheny County, Pennsylvania, as a qualified elector, and the record shows he voted at the fall primary and the general election of 1929, and at the spring primary of 1930. He was registered on presentation of a tax receipt issued by the County Treasurer of Allegheny County, dated August 20, 1929. If this tax receipt was a valid one, this elector would be entitled to register on it at the fall registration of 1930.

On April 19, 1930, Lawrence D. Blair, Esq., a citizen and qualified elector of the City of Pittsburgh, and also a member of the Bar of Allegheny County, as a member of and at the direction of the Committee on Elections of the Allegheny County Bar Association, filed a petition with the Board of Registration Commissioners of the City of Pittsburgh in due form of law, objecting to the action of the registrars in accepting the claim of said Israel Rubinovitz for registration and in registering said Israel Rubinovitz, on the ground that "The tax receipt on which said elector was registered was issued on a forged authorization, and/or because of other irregularities;" that is, on the ground, in substance, that Israel Rubinovitz was not entitled to be registered or to vote at the then ensuing elections, for the reason that the tax receipt on which he was registered was unlawfully procured from the County Treasurer of Allegheny County on a forged written order purporting to be signed by Israel Rubinovitz, and purporting to authorize one Domenick Mastriano to pay the poll tax of said Israel Rubinovitz and to secure a tax receipt for him. After due notice to Israel Rubinovitz, and after one or more hearings by the board of registration commissioners, at which Israel Rubinovitz appeared personally and by counsel, said board, on May 12, 1930, entered an order dismissing the objections of Lawrence D. Blair to the registration of said Israel Rubinovitz without assigning any reason for their action. Whereupon Lawrence D. Blair, acting in the capacity aforesaid, filed his petition here, and on May 16, 1930, the court made an order allowing an appeal from the decision of the board of registration commissioners, and set May 22, 1930, as the time for hearing said appeal, on which date there was a postponement to May 29, 1930, on which latter date this matter came on for hearing in this court and testimony was taken. Neither the board of registration commissioners nor Israel Rubinovitz filed any answer to the petition. Several employees of the board were present in court at the hearing, but took no part therein, and Israel Rubinovitz was represented by counsel, but was not present in person, and no testimony was offered on his behalf.

It is beyond all doubt that the tax receipt upon which Israel Rubinovitz was registered was illegally procured and was utterly void in his hands, and, therefore, he was not entitled to be registered as an elector qualified to vote on the strength of that tax receipt, which was procured from the county treasurer on what purported to be a written order from Israel Rubinovitz to Domenick Mastriano, authorizing him to obtain a tax receipt for Rubinovitz. This written order was a manifest forgery. While Rubinovitz appeared before the board of registration commissioners, no report of this testimony was furnished us, and he did not come into court to defend his rights, nor did his counsel offer any testimony in his behalf. There was testimony that it was not uncommon to issue tax receipts on such orders as that on which Rubinovitz's receipt was issued, though presented by an entirely unknown person, and though he presented a number of such orders at one time and paid the amounts required. We may rightfully infer that Rubinovitz paid no money for his receipt, as required by law, and, as stated, we know positively he did not sign the written order which was used. We have no doubt the tax receipt was secured without consulting Rubinovitz at all.

Counsel for the registrant made no pretense that Rubinovitz was entitled to be registered, but did object to his name being stricken from the registers, because he asserted the court had no jurisdiction, since section one of the Act of June 18, 1915, P. L. 1027, provides that petitions for appeals from the board of registration commissioners must be filed not less than ten days preceding an election, and counsel contends that as the petition in this case was

not filed until May 16, 1930, and the primary election was on May 20, 1930, therefore, it was too late to have this matter considered by this court. It was also contended that as there would be a new registration in the fall of 1930, and that unless there was a special election, Rubinovitz would not be able to exercise any right under the existing registration, this is but a moot case.

Section one of article eight of the Constitution of Pennsylvania provides, among other things, that in order to qualify a citizen to vote, if he is twenty-two years of age and upwards, "He shall have paid within two years a state or county tax, which shall have been assessed at least two months and paid at least one month before the election."

By an Act of Assembly of July 15, 1897, P. L. 276, it is declared to be unlawful "for any person or persons to pay, or cause to be paid, any occupation or poll tax assessed against any elector except on the written and signed order of such elector authorizing such payment to be made." This act makes it unlawful for any person authorized to collect taxes to receive any occupation or poll tax from any person other than the elector himself, except upon his written and signed order authorizing such payment to be made, and also makes it unlawful for any person to vote, or attempt to vote, at any election upon a tax receipt obtained in violation of the act, and makes it a misdemeanor for any person to violate any of the provisions of this act.

In section eight of the Act of July 24, 1913, P. L. 977, it is enacted that "Every person who shall have paid his taxes, either by himself or his duly authorized agent or attorney, on or before the last day for registration, and who shall possess all the other qualifications of an elector as provided in the Constitution and laws of this Commonwealth, . . . shall be entitled to be registered at the Fall registration."

In section one of the Act of June 18, 1915, P. L. 1027, it is enacted that, "If any citizen shall object to the action of the registrars in accepting or rejecting any claim for registration, he may file (with) his petition, duly sworn to by said citizen, with the commissioners, setting forth the ground of his complaint. . . . When such petitions are filed, the commissioners shall fix a time and place for hearing them, sufficiently in advance of the election to enable the same to be heard and disposed of prior thereto, and to have a review thereof by the courts. Such hearing shall be public before the commissioners, and the register of voters may be amended, either by the insertion of a new name or the cancellation of a name already on the register, or otherwise, as the commissioners may order. . . . The applicant, or any elector who is not satisfied with the decision of the commissioners, may petition the court of common pleas, setting forth the reason why he feels that injustice has been done, and thereupon the said court of common pleas may, in its discretion, allow an appeal to it from the decision of the commissioners. The said court may then fix a day for a public hearing. . . . The said court, after such public hearing, may reverse, affirm or alter the decision of the commissioners. Such petitions for appeals must be filed not later than ten days preceding an election."

In Com. v. Shrontz, 213 Pa. 327, it was held that in a judicial inquiry into an elector's right to vote, the court may go behind the tax receipt and ascertain the actual facts.

While the board of registration commissioners was not represented at the hearing of this case, we are informally advised the reason they refused to strike off the registration of Israel Rubinovitz was that they were not sure they had any right to go behind the record of the face of the tax receipt on

which Rubinovitz was registered. We have no doubt that the tax receipt of Rubinovitz was unlawfully issued, unlawfully procured and was unlawfully in the possession of Rubinovitz, and he was not entitled to be registered on that receipt. He did not pay for it himself, as required by law; he did not give a written order authorizing any one else to pay his tax and procure a receipt for him, as required by law. The written order on which the tax was paid and the receipt was issued was established to be a forgery as clearly as it is possible to establish any fact. This should have been apparent to the board of registration commissioners. There was no purpose in having a hearing in regard to the registration of this elector unless the facts could be inquired into, and when the inquiry was made here it was shown positively that the elector was not entitled to be registered. There can be no question this court has authority to inquire into the legality of this tax receipt: Com. v. Shrontz, 213 Pa. 327. It seems to us beyond doubt that the board of registration commissioners had the same power and that they should have stricken the registration of Israel Rubinovitz from the register.

While it is true the proceedings here are statutory and that the statute must be strictly followed, we are satisfied the provision of the statutes hereinbefore quoted, that a petition must be filed ten days before an election, does not forbid the consideration of this matter now, because the petition for the appeal was not filed ten days before the primary election. There was no effort to deprive the registrant of his vote at the primary election on May 20, 1930, and the court granted the appeal and set a date for a hearing after the date of the primary election. It is true there will be a new registration of electors before the election next November, but it is provided in section one of the Act of May 28, 1915, P. L. 576, that "The list shall become of no validity at the beginning of the period of Fall registration next succeeding that at which the registers were opened," from which it appears that the registration of Israel Rubinovitz is still a valid registration which would entitle him to vote should a special election be held before the beginning of the period of registration this fall, and, as above stated, the tax receipt issued to Rubinovitz would entitle him to register at the fall registration this year if it were a valid tax receipt. The question is not, therefore, a moot one, and should be determined now. We will, therefore, enter a decree reversing the order of the board of registration commissioners dismissing the objection of the petitioner to the registration of Israel Rubinoviz, and ordering that the name of Israel Rubinovitz on the registers of the First District of the Third Ward of the City of Pittsburgh, as a registered elector, shall be canceled and stricken from the registers.

### Decree.

And now, to wit, June 25, 1930, upon consideration of the petition, the testimony taken and arguments of counsel, it is ordered and decreed that the decision of the Board of Registration Commissioners of Pittsburgh, Allegheny County, made on May 12, 1930, dismissing the objection of petitioner to the registration of Israel Rubinovitz as an elector qualified to vote, is hereby reversed, and said board of registration commissioners are directed to strike the name of said Israel Rubinovitz from the registers of the First District of the Third Ward of the City of Pittsburgh, Allegheny County, Pennsylvania, as a qualified elector of the City of Pittsburgh.

From William J. Aiken, Pittsburgh, Pa.